UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY B. SMITH,<br>    Plaintiff | )<br>)<br>)<br>) |
| vs. | ) CIVIL ACTION NO.: 04 CV 10632 MEL<br>) |
| DAVID C. NICHOLSON, TRUSTEE<br>OF THE D.J.J. REALTY TRUST,<br>DOMINIC M. SAWICKI,<br>TRUSTEE OF THE DOMINIC M.<br>SAWICKI NOMINEE TRUST,<br>AND CAROL ANN WHITNEY<br>AND GLENN WHITNEY,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS, DAVID C. NICHOLSON, TRUSTEE OF THE D.J.J. REALTY TRUST, DOMINIC M. SAWICKI, TRUSTEE OF THE DOMINIC M. SAWICKI NOMINEE TRUST, CAROL ANN WHITNEY AND GLENN WHITNEY'S <u>CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

Now comes the defendants, DAVID C. NICHOLSON, TRUSTEE OF THE D.J.J. REALTY TRUST, DOMINIC M. SAWICKI, TRUSTEE OF THE DOMINIC M. SAWICKI NOMINEE TRUST, CAROL ANN WHITNEY AND GLENN WHITNEY, (hereinafter "Defendants"), pursuant to Local Rule 56.1 of the Local Rules of the United States District Court, and submit the following as a Concise Statement of Undisputed Material facts in support of their Joint Motion for Summary Judgment.

The <u>plaintiff, Mary Smith</u>, provided the following statements through her deposition testimony taken on May 11, 2005 and in her answers to Interrogatories propounded by the defendant, Nicholson, attached hereto as Exhibit 1 and 4.

1. On April 6, 2002 the plaintiff, Mary Smith, attended a funeral with Joanne Dayton for Ms. Patricia Nicholson.  (**Plaintiff's Deposition, pages 31, 32**)

2. The plaintiff had never met nor knew the decedent, Ms. Nicholson. (**Plaintiff's Deposition, page 31-32**)

3. Joanne Dayton's family was friends with the Nicholson family, and the plaintiff agreed to accompany Ms. Dayton to this funeral. (**Plaintiff's Deposition, page 33**)

4. After the funeral services concluded, the plaintiff accompanied Ms. Dayton and others back to the Nicholson residence. (**Plaintiff's Deposition, page 33**)

5. The plaintiff had never been to the Nicholson residence prior to this date. (**Plaintiff's Deposition, page 35**)

6. The plaintiff drove with Ms. Dayton as a front seat passenger in her vehicle. (**Plaintiff's Deposition, pages 34-35**)

7. Ms. Dayton parked her vehicle on Old Homestead Lane. (**Plaintiff's Deposition, pages 35, 82 and 119 and Plaintiff's Answers to Nicholson's Interrogatory number 10**.)

8. Old Homestead Lane is a paved main road that is owned and maintained by the Town of Harwich, MA. (**Plaintiff's Deposition, pages 119-120**)

9. At the area where Ms. Dayton parked her car on Old Homestead Lane, the road was flat. (**Plaintiff's Deposition, page 36, 38**)

10. The plaintiff crossed Old Homestead Lane to get to Old Lantern Lane in order to get to the Nicholson house. (**Plaintiff's Deposition, page 109 and Plaintiff's Answers to Nicholson's Interrogatory number 10**.)

11. The plaintiff fell on Olde Lantern Lane at around 2:00 PM. (**Plaintiff's Deposition, page 34**)

12. The plaintiff and Joanne Dayton decided to park on the road above the Nicholson home and walk down Olde Lantern Lane to the Nicholson house. (**Plaintiff's Deposition, page 35**)

13. The area where the plaintiff fell was on a hill. (**Plaintiff's Deposition, page 36**)

14. After the car was parked, the plaintiff had to cross the road and walked down the hill to get to the Nicholson house. (**Plaintiff's Deposition, page 37-38, 109, 110**)

15. At the time of this loss, the top $2/3^{rds}$ of Olde Lantern Lane had an asphalt surface. (**Plaintiff's Deposition, page 39, 79, 80**)

16. At the time of this loss, the later $1/3^{rd}$ was a mix of asphalt surface with patches of large rocks. (**Plaintiff's Deposition, page 39, 79, 80**)

17. The plaintiff was picking her way through the stones on the surface of Olde Lantern Road. (**Plaintiff's Deposition, page 40**)

18. The rocks were large, approximately 2-3 inches in diameter. (**Plaintiff's Deposition, page 39, 113**)

19. The plaintiff walked down the first $2/3^{rds}$ of Olde Lantern Lane without incident. (**Plaintiff's Deposition, page 39-40, 110**)

20. She was approximately 10-12 feet off the asphalt portion of the road when she fell. (**Plaintiff's Deposition, page 40, 114**)

21. The plaintiff picked her way through the stones as she walked on this portion of Olde Lantern Lane. (**Plaintiff's Deposition, page 40**)

22. The plaintiff was very careful about where she put her feet. (**Plaintiff's Deposition, page 79**)

23. The plaintiff was wearing flat shoes when the loss occurred. (**Plaintiff's Deposition, page 40**)

24. The ground was dry and the weather was sunny. (**Plaintiff's Deposition, page 34, 40, 79**)

25. The plaintiff testified that she "skidded on the rocks." (**Plaintiff's Deposition, page 41**)

26. At the time she fell the plaintiff was looking at her feet because of the condition of the road. She was picking her way down the hill toward the Nicholson house. (**Plaintiff's Deposition, page 42**)

27. The plaintiff did not see the rock that caused her fall, she just felt a rock under her foot. (**Plaintiff's Deposition, pages 44, 45**)

28. On the day of the fall the plaintiff could see the roadway in front of her as she walked. (**Plaintiff's Deposition, page 79**)

29. She noticed a lot of rocks that appeared to have been "dumped" after the asphalt part of the road ended. (**Plaintiff's Deposition, page 79**)

30. The plaintiff noticed the rocks when she got to it, and was being very careful about where she put her feet. (**Plaintiff's Deposition, page 80**)

31. The area where the asphalt ended and the mix of asphalt and rocks began was obvious to the plaintiff before the fall. (**Plaintiff's Deposition, page 111**)

32. The rocks were not concealed in any way; they were out in the open. (**Plaintiff's Deposition, page 111**)

33. The rocks were not concealed. (**Plaintiff's Deposition, page 111**)

34. The rocks were in the open. (**Plaintiff's Deposition, page 111**)

35. The plaintiff does not know who put the rocks there. (**Plaintiff's Deposition, page 111, 113 and 114**)

36. According to the plaintiff, "a cursory visual inspection of the premises would have informed the defendant of the dangerous condition of the surface of Olde Lantern Lane…" (**Plaintiff's Answers to Nicholson's Interrogatories, Number 11(c)**)

The witness, <u>Debra M. Seith</u>, provided the following testimony at her deposition taken on October 14, 2005, attached hereto as Exhibit 2:

37. As Debra Seith started down the course of Old Homestead Lane, the condition of the road was obvious to her. (**Deposition of Ms. Seith, page 15**.)

38. It was obvious to Debra Seith as she started walking down Old Homestead Lane that the loose rocks and gravel were there, they were not hidden under anything. (**Deposition of Ms. Seith, pages 16 and 17**)

39. There was a decline in the road from the street where they parked their cars down towards the Nicholson's house. (**Deposition of Ms. Seith, page 20**)

40. The plaintiff fell on the decline. (**Deposition of Ms. Seith, page 20**.)

41. To the best of Debra Seith's recollection, the plaintiff fell on the right side of the road as they were descending down Old Homestead Lane. (**Deposition of Ms. Seith, page 22**)

42. There was nothing on Olde Lantern Lane that prevented someone from driving down Olde Lantern Lane to the Nicholson's house. **Deposition of Ms. Seith, page 38**)

43. There was nothing that prevented her from seeing the surface of Olde Lantern Lane on the date of the accident. (**Deposition of Ms. Seith, page 39**)

44. To the best of her knowledge the rocks and stone she observed along the edges of Olde Lantern Lane were naturally occurring. **Deposition of Ms. Seith, page 41**)

The witness, <u>Kent L. Seith,</u> provided the following testimony at his deposition taken on October 14, 2005, attached hereto as Exhibit 3:

45. Olde Lantern Lane was partially paved at the beginning stopped about half way down; there were lumps of tar; and the road changed from paved to dirt toward the bottom landing area. **Deposition of Mr. Seith, pages 26-28**)

46. It became obvious that the road was getting worse as one looked down Olde Lantern Lane, that it was turning to dirt. (**Deposition of Mr. Seith, page 27**)

47. One could tell from the top that it was sandy and turned into dirt and it was just not a good road from the top. (**Deposition of Mr. Seith, pages 27-28**)

48. The road starts off pretty level and gradually goes down. By the end it is pretty steep. (**Deposition of Mr. Seith, page 30**)

4

49. The Plaintiff fell in the area where the road was a gradual decline. (**Deposition of Mr. Seith, page 31**)

50. When he saw her fall it looked like her left foot, perhaps one of her feet, literally rolled out from under her as if she had stepped on a gravel rock or some sort. (**Deposition of Mr. Seith, page 39**)

51. It was obvious to Mr. Seith that the road was broken up and rocky. (**Deposition of Mr. Seith, pages 44**)

52. He did not see any particular rock or gravel that the plaintiff feel on; there was not a big giant piece or bowling ball size piece. (**Deposition of Mr. Seith, pages 44 and 45**)

53. The condition of the road was obvious to him. (**Deposition of Mr. Seith, page 54**)

Dated: January 30, 2007

The Defendants
By their attorneys,

**DEFENDANTS, CAROL ANN AND GLENN WHITNEY**

*/s/ Bruce R. Fox*
_____
Bruce R. Fox, Esquire
BBO#: 176320
LAW OFFICES OF BRUCE R. FOX
27B Midstate Office Park
Auburn, MA 01501
(866) 290-7435

**DEFENDANT, DAVID C. NICHOLSON, TRUSTEE OF THE D.J.J. REALTY TRUST**

*/s/ Stephen M.A. Woodworth*
_____
Stephen M.A. Woodworth, Esquire
BBO 534330
John F. Gleavy, Esquire
BBO 636888
LYNCH & LYNCH
45 Bristol Drive
South Easton, MA 02375
(508) 230-2500

**DEFENDANT, DOMINIC M. SAWICKI, TRUSTEE OF THE DOMINIC M. SAWICKI NOMINEE TRUST**

*/s/ Robert A. Curley, Jr.*

_____
Robert A. Curley, Jr., Esquire
BBO 109180
CURLEY & CURLEY P.C.
27 School Street
Boston, MA 02108
(617) 523-2990

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Bruce R. Fox*

_____
Bruce R. Fox

Dated: January 30, 2007

*/s/ Bruce R. Fox*

_____
Bruce R. Fox, Esquire