Exhibit 6
Smith v Nicholson, et al.
Civil Action No.: 04 CV 10632 MEL

based on a number of factors, not the least of which was the defendant's admission to committing perjury at her trial. An appellate court should not substitute its judgment in a case like this, when the judge's conclusions are supported and explained. The judge's reasoned rejection of the defendant's testimony, that her failure to reveal the abuse was involuntary due to Loring's conduct and the effects of battered woman syndrome, negates the central premise on which her motion was based. See *United States v. Rouse,* 168 F.3d 1371, 1375 (D.C.Cir.1999).

[13] Finally, the defendant claims that the judge erred in denying her motion for reconsideration and motion to expand the record. With these motions, the defendant presented five additional affidavits from correction officers employed by the Franklin County house of correction during the defendant's stay there, which, according to the defendant, directly contradict the judge's findings that the defendant's account of Loring's continuing control while awaiting trial was "implausible" and had "no corroboration." There is no error in the judge's denial of the defendant's motions.

The judge reasonably may have considered that the affidavits were not new, because the witnesses were not clearly unavailable when the motion was heard.[14] See Mass. R.Crim. P. 30(c)(2), 378 Mass. 900 (1979). More likely, the judge reasonably may have decided that the affidavits added nothing of substance to the defendant's case, and, as such, did not require another evidentiary hearing. See *Commonwealth v. Downs,* 31 Mass.App.Ct. 467, 470, 579 N.E.2d 679 (1991). While the affidavits indicate that the defendant and Loring communicated with each other before the defendant's trial, there is nothing in them in the nature of admissible evidence that shows, with any measure of probability, that [227]the abusive relationship claimed by the defendant happened while the two were incarcerated. Furthermore, contrary to the defendant's assertion, the judge's denial of the motion for a new trial was based on the rejection of her credibility and was not dependent solely on the judge's skepticism of the defendant's account of Loring's conduct toward her while she was awaiting trial. The judge's essential finding was that the defendant, even if she had been subjected to some of the abuse she described, did not suffer from the effects of battered woman syndrome, so that she "had a present awareness of being abused, was cognizant that evidence of that abuse might aid[ ] her defense and made a decision not to pursue that defense."

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*



431 Mass. 201

[201]Joseph J. O'SULLIVAN

v.

Norman SHAW & another.[1]

Supreme Judicial Court of Massachusetts, Essex.

Argued Jan. 3, 2000.

Decided April 13, 2000.

Guest sought to recover from homeowners for injuries sustained in diving he-

---

14. The defendant argues that the affidavits were newly discovered because the correction officers came forward only after reading a newspaper account of the denial of the defendant's motion for a new trial, and at considerable professional risk, having had been informed by the sheriff of Franklin County that job repercussions might flow from their signing affidavits. The affidavits themselves are silent on these matters.

1. Betty Shaw.

**952** Mass.        **726 NORTH EASTERN REPORTER, 2d SERIES**

adfirst into shallow end of their swimming pool. The Superior Court Department, Essex County, Howard J. Whitehead, J., entered summary judgment for homeowners, and guest appealed. The Appeals Court, Lynch, J., held that, under open and obvious rule, homeowners had no duty as matter of law to warn guest of danger of diving headfirst into swimming pool.

Affirmed.

**1. Negligence ⚖211, 1692**

Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy.

**2. Negligence ⚖1010, 1032**

An owner or possessor of land owes a duty of reasonable care to all persons lawfully on the premises.

**3. Negligence ⚖1033**

Landowner's duty of reasonable care to all persons lawfully on the premises includes an obligation to maintain his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.

**4. Negligence ⚖1012**

Landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence.

**5. Negligence ⚖1020**

Landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising reasonable care for his own safety would suffer injury from such blatant hazards.

**6. Negligence ⚖1012, 1020**

Open and obvious danger doctrine involves objective inquiry that focuses on the reasonableness of the defendant's conduct; it presumes a plaintiff's exercising reasonable care for his own safety and asks whether the dangerous condition was, objectively speaking, so obvious that the defendant would be reasonable in concluding that an ordinarily intelligent plaintiff would perceive and avoid it and, therefore, that any further warning would be superfluous.

**7. Negligence ⚖1012, 1286(7), 1562**

Open and obvious danger rule concerns the existence of a defendant's duty of care, which the plaintiff must establish as part of his prima facie case before any comparative analysis of fault may be performed.

**8. Common Law ⚖11**
   **Statutes ⚖222**

Statute is not to be interpreted as effecting a material change in or repeal of the common law unless the intent to do so is clearly expressed.

**9. Negligence ⚖1012, 1286(7)**

Legislature's express abolition of defense of assumption of risk did not implicitly abolish open and obvious danger rule. M.G.L.A. c. 231, § 85.

**10. Negligence ⚖1020**

Open and obvious danger rule obviated any duty on part of homeowners to warn guest not to dive headfirst into the shallow end of the homeowners' swimming pool, where risk of injury was obvious to a hypothetical person of average intelligence; diving board was affixed to other end of pool, and there was obvious necessity of checking depth of water, which was not determinable at night by person standing outside water.

———

Peter M. Malaguti, Andover, for the plaintiff.

O'SULLIVAN v. SHAW    Mass.   953
Cite as 726 N.E.2d 951 (Mass. 2000)

W. Joseph Flanagan, Boston, for the defendants.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

LYNCH, J.

The plaintiff seeks to recover for injuries he sustained when he dived, headfirst, into the shallow end of a swimming pool owned by the defendants and located on their residential property. His complaint alleges that the defendants [202]were negligent in allowing visitors to dive into the shallow end of the pool and in failing to warn of the danger associated with this activity. A judge in the Superior Court allowed the defendants' motion for summary judgment, reasoning that diving into the shallow end of a swimming pool is an open and obvious danger which was known to the plaintiff, and that the defendants therefore did not owe the plaintiff a duty of care. The plaintiff timely appealed, and we transferred the case here on our own motion. We affirm.

1. *Facts.* The undisputed record before the motion judge, viewed in the light most favorable to the plaintiff, establishes the following material facts:

The pool in question is an in-ground type, measuring eighteen feet in width by thirty-six feet in length, with both shallow and deep ends. The bottom of the pool is level in the shallow end, for approximately ten feet of the pool's length, after which it slopes gradually toward the deep end, the sides of which are tapered. When filled to capacity, the pool is four feet deep at its shallowest point and eight feet at its deepest. There are no markers, either in the pool or on its exterior surround, to indicate the pool's depth at various points along its length or to demarcate the separation of its shallow and deep ends. However, a diving board is affixed to the exterior of the pool at its deep end. The pool's interior is covered with a vinyl liner and there is no underwater lighting, so that the bottom of the pool is not visible at night.

The plaintiff, who was a friend of the defendants' granddaughter, had swum in the pool at least once prior to the night of the accident, during daylight hours. He had observed various swimmers dive into the pool's deep end from the diving board. He also saw swimmers dive into the pool from the shallow end by performing a flat or "racing dive," i.e., diving headfirst, with arms outstretched over their heads, landing in the water at an angle roughly parallel to the bottom of the pool, gliding just beneath the water's surface and eventually surfacing in the deep end. The plaintiff himself had previously dived into the pool's deep end from the diving board two or three times, and had made one dive into the shallow end. Although he did not know the exact dimensions of the pool, the plaintiff was aware of approximately where the shallow part ended. Moreover, he was aware of the shallow end's approximate depth, having observed other swimmers standing in that part of the pool and having subsequently stood next to these people outside the pool.

[203]On the evening of July 16, 1996, the plaintiff, then twenty-one years of age, was a guest of the defendants' granddaughter at the defendants' residence. The defendants were out of town, but their granddaughter had permission to be on the premises and to use the swimming pool. Sometime between 9 and 9:30 P.M., the plaintiff suffered injuries to his neck and back when he dived into the shallow end of the pool. At the time, he was attempting, in racing dive fashion, to clear the ten-foot expanse of the shallow end and surface in the deep end, but he entered the water at too steep an angle and struck his head on the pool bottom, resulting in a fracture of his cervical vertebrae. By his own admission, the plaintiff knew that he could be injured if he were to hit his head on the bottom of the pool when diving, and his purpose in trying to clear the shallow end was to avoid the sort of accident that

occurred. The plaintiff's injury caused immediate paralysis in his lower extremities and required a two-day stay in the hospital, but the paralysis was not permanent.

2. *Standard of review.* Summary judgment is appropriate where there is no genuine issue of material fact and, where viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56(c), 365 Mass. 824 (1974); *Lyon v. Morphew,* 424 Mass. 828, 831, 678 N.E.2d 1306 (1997). "[A] party moving for summary judgment in a case in which the opposing party [has] the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 716, 575 N.E.2d 734 (1991). "A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial." *Id.* at 711, 575 N.E.2d 734, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[1] 3. *Survival of the open and obvious danger rule.* "Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." *Davis v. Westwood Group,* 420 Mass. 739, 742–743, 652 N.E.2d 567 (1995). Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy. See *id.* at 743, 652 N.E.2d 567, citing *Yakubowicz v. Paramount Pictures Corp.,* 404 Mass. 624, 629, 536 N.E.2d 1067 (1989).

[2–5] [204]An owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises. See *Davis v. Westwood Group, supra.* This duty includes an obligation to "maintain[ ] his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk," *Mounsey v. Ellard,* 363 Mass. 693, 708, 297 N.E.2d 43 (1973), and "to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." *Davis v. Westwood Group, supra,* and cases cited. However, a landowner is "not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." *Lyon v. Morphew,* 424 Mass. 828, 833, 678 N.E.2d 1306 (1997), quoting *Toubiana v. Priestly,* 402 Mass. 84, 88, 520 N.E.2d 1307 (1988). Moreover, it is well established in our law of negligence that a landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence. See *Lyon v. Morphew, supra,* quoting *Toubiana v. Priestly, supra* at 89, 520 N.E.2d 1307. See also *Thorson v. Mandell,* 402 Mass. 744, 749, 525 N.E.2d 375 (1988); *Young v. Atlantic Richfield Co.,* 400 Mass. 837, 842, 512 N.E.2d 272 (1987), cert. denied, 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988), and cases cited; *Waters v. Banning,* 339 Mass. 777, 777, 162 N.E.2d 41 (1959), and cases cited; *Greenfield v. Freedman,* 328 Mass. 272, 274–275, 103 N.E.2d 242 (1952); *Sterns v. Highland Hotel Co.,* 307 Mass. 90, 96, 29 N.E.2d 721 (1940), and cases cited; *Sweet v. Cieslak,* 23 Mass.App.Ct. 908, 908–909, 499 N.E.2d 1218 (1986); *Polak v. Whitney,* 21 Mass.App.Ct. 349, 353, 487 N.E.2d 213 (1985); J.R. Nolan & L.J. Sartorio, Tort Law § 336, at 89–90 (2d ed.1989). Landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for

**O'SULLIVAN v. SHAW** Mass. **955**
Cite as 726 N.E.2d 951 (Mass. 2000)

his own safety would suffer injury from such blatant hazards. See *Blackmer v. Toohil,* 343 Mass. 269, 271–272, 178 N.E.2d 274 (1961); *St. Rock v. Gagnon,* 342 Mass. 722, 723–724, 175 N.E.2d 361 (1961). Stated otherwise, where a danger would be obvious to a person of ordinary perception and judgment, a landowner may reasonably assume that a visitor has knowledge of it and, therefore, "any further warning would be an empty form" that would not reduce the likelihood of resulting harm. *LeBlanc v. Atlantic Bldg. & Supply Co.,* 323 Mass. 702, 705, 84 N.E.2d 10 (1949). See *Bavuso v. Caterpillar Indus., Inc.,* 408 Mass. 694, 699, 563 N.E.2d 198 (1990) (products liability); *Waters v. Banning, supra.*

[205]The plaintiff argues on appeal that the open and obvious danger rule was implicitly abolished by the comparative negligence statute, G.L. c. 231, § 85, as appearing in St.1973, c. 1123, § 1, which expressly abolishes "the defense of assumption of risk," because, he maintains, the former is a corollary of the latter. Accordingly, he argues, the judge erred in concluding that the defendants owed no duty to the plaintiff due to the obvious nature of the risk, for it properly belongs to a jury to decide the issue of the defendants' liability by applying statutorily mandated principles of comparative fault. We reject this argument.

[6] Although we have not previously addressed this precise issue, Massachusetts courts have continued to apply the open and obvious danger rule in cases decided after the Legislature's abolition of the assumption of risk defense, thereby at least implicitly recognizing the rule's continuing viability. See, e.g., *Lyon v. Morphew, supra; Toubiana v. Priestly, supra; Thorson v. Mandell, supra; Young v. Atlantic Richfield Co., supra; Polak v. Whitney, supra* at 354, 487 N.E.2d 213. See also *Gauvin v. Clark,* 404 Mass. 450, 454–455 & n. 5, 537 N.E.2d 94 (1989) (given statutory abolition of assumption of risk defense in negligence cases, court's analysis of limits on defendants' liability properly proceeds in terms of existence of duty of care). Assumption of risk, along with contributory negligence, was an affirmative defense to negligence for which the defendant bore the burden of proof at trial. See *Winchester v. Solomon,* 322 Mass. 7, 11, 75 N.E.2d 653 (1947), citing *Leary v. William G. Webber Co.,* 210 Mass. 68, 73, 96 N.E. 136 (1911) (assumption of risk); *Duggan v. Bay State Ry.,* 230 Mass. 370, 377, 119 N.E. 757 (1918) (contributory negligence). A plaintiff assumed the risk of harm when he voluntarily exposed himself to a known danger which had been caused by the defendant's negligence; the focus of the inquiry was thus on the plaintiff's own carelessness or negligence in failing to avoid a hazard which he knew about and appreciated. See *Breault v. Ford Motor Co.,* 364 Mass. 352, 354–355, 305 N.E.2d 824 (1973); *Fitzgerald v. Connecticut River Paper Co.,* 155 Mass. 155, 158–159, 29 N.E. 464 (1891); W.L. Prosser & W.P. Keeton, Torts § 68, at 486–487 (5th ed.1984). By contrast, the open and obvious danger doctrine arises in connection with the separate issue of a defendant's duty to protect others from dangerous conditions about which the defendant knows or should know. See cases cited, *supra* at 204, 726 N.E.2d at 954; *Callahan v. Boston Edison Co.,* 24 Mass.App.Ct. 950, 953, 509 N.E.2d 1208 (1987) ("Whether a danger is open [206]and obvious has to do with the duty of the defendant, not the negligence of the plaintiff"). Rather than evaluating a particular plaintiff's subjective reasonableness or unreasonableness in encountering a known hazard, the inquiry is an objective one that focuses, instead, on the reasonableness of the defendant's conduct: it presumes a plaintiff's exercising reasonable care for his own safety and asks whether the dangerous condition was, objectively speaking, so obvious that the defendant would be reasonable in concluding that an ordinarily intelligent plaintiff would perceive and avoid it and, therefore, that any further warning would be superfluous.

**956** Mass.     **726 NORTH EASTERN REPORTER, 2d SERIES**

**[7–9]** Thus, the superseded common-law defense of assumption of risk goes to a plaintiff's failure to exercise due care for his own safety, whereas the open and obvious danger rule concerns the existence of a defendant's duty of care, which the plaintiff must establish as part of his prima facie case before any comparative analysis of fault may be performed. Because "[a] statute is not to be interpreted as effecting a material change in or repeal of the common law unless the intent to do so is clearly expressed," *Riley v. Davison Constr. Co.*, 381 Mass. 432, 438, 409 N.E.2d 1279 (1980), quoting *Pineo v. White*, 320 Mass. 487, 491, 70 N.E.2d 294 (1946), we conclude that the Legislature's express abolition of "the *defense* of assumption of risk" in G.L. c. 231, § 85, does not alter the plaintiff's burden in a negligence action to prove that the defendant owed him a duty of care in the circumstances, and thus leaves intact the open and obvious danger rule, which operates to negate the existence of a duty of care (emphasis added).[2]

**[10]** 4. *Application of open and obvious danger rule.* The remaining issue concerns whether the judge, in granting summary judgment for the defendants, correctly concluded that the open and obvious danger rule obviated any duty to warn the plaintiff not to dive headfirst into the shallow end of the defendants' swimming pool. Plain common sense, bolstered by the weight of authority in other jurisdictions where this issue has been addressed, convince us that this conclusion is indisputably correct. See, e.g., *Lederman v. Pacific Indus.*, 939 F.Supp. 619, 625 (N.D.Ill. 1996), aff'd, 119 F.3d 551 (7th Cir.1997) (under Illinois law, manufacturer of swimming pool under no duty to warn adult of danger of quadriplegia posed by diving into water of uncertain depth); *Neff v. Coleco Indus., Inc.* 760 F.Supp. 864, 868 (D.Kan.1991), aff'd, 961 F.2d 220 (10th Cir. 1992) (manufacturer had no duty to warn of open and obvious risk of diving headfirst into shallow swimming pool); *Murphy v. D'Youville Condominium Assoc., Inc.*, 175 Ga.App. 156, 333 S.E.2d 1 (1985) (defendant under no duty to warn of pool's shallowness where this fact was apparent and known to plaintiff); *Osborne v. Claydon*, 266 Ill.App.3d 434, 436, 440–441, 203 Ill. Dec. 764, 640 N.E.2d 684 (1994) (pool owner under no duty to warn of risk of making running dive into pool); *Dowen v. Hall*, 191 Ill.App.3d 903, 906–907, 138 Ill.Dec. 933, 548 N.E.2d 346 (1989) (landowner un-

---

2. The authors of one text conclude that the duty-negating principle which we recognize under the open and obvious danger doctrine and which is denoted in other jurisdictions as "primary assumption of risk" should survive the advent of a comparative negligence regime, see W.L. Prosser & W.P. Keeton, Torts § 68, at 481 & n. 10 (5th ed.1984), and note that the majority of courts that have considered the issue have so held. See *id.* at 496–497 & n. 62. See also *Kaplan v. Exxon Corp.*, 126 F.3d 221, 225 (3d Cir.1997) (applying Pennsylvania law); *Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 403, 491 N.W.2d 208 (1992); *Carrender v. Fitterer*, 503 Pa. 178, 188–189, 469 A.2d 120 (1983); *id* at 189, 469 A.2d 120 (Flaherty, J., concurring); *Bucheleres v. Chicago Park Dist.*, 171 Ill.2d 435, 447–448, 216 Ill.Dec. 568, 665 N.E.2d 826 (1996); *Ward v. K mart Corp.*, 136 Ill.2d 132, 145, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990).

We are aware of other jurisdictions that have held that the open and obvious danger rule is superseded by the comparative negligence rule. See, e.g., *Harrison v. Taylor*, 115 Idaho 588, 590–593, 768 P.2d 1321 (1989) (abolishing open and obvious danger rule, but holding that issue of comparative negligence may be decided as matter of law if reasonable minds could not differ); *Northern Ind. Pub. Serv. Co. v. Stokes*, 493 N.E.2d 175, 177 (Ind. Ct.App.1986) (observing that open and obvious danger rule limited under Indiana law to products liability cases and thus not applicable in general negligence suit, but affirming denial of defendant's motion for directed verdict not on these grounds but because conflicting reasonable inferences could be drawn from evidence concerning whether danger was open and obvious). See also *Rockweit v. Senecal*, 197 Wis.2d 409, 541 N.W.2d 742 (1995); *Koutoufaris v. Dick*, 604 A.2d 390, 397 (Del.1992); *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 516–521 (Tex.1978). For the reasons stated in this opinion, however, we decline to follow this contrary line of authority.

der no duty to warn of danger of diving off pier into shallow part of natural lake of uncertain depth); *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.Ct.App.1996) (no duty for homeowner to warn of obvious danger of hitting head on side of pool while diving); *Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 384, 403, 491 N.W.2d 208 (1992) (manufacturer of simple product, such as aboveground swimming pool, under no duty to warn of obvious danger of diving into shallow water); *Long v. Manzo*, 452 Pa.Super. 451, 461–462, 682 A.2d 370 (1996) (obvious danger of diving into shallow pool relieved landowner of duty to warn child); *Griebler v. Doughboy Recreational, Inc.*, 160 Wis.2d 547, 559–560, 466 N.W.2d 897 (1991) (diving headfirst into swimming pool of |208unknown depth is open and obvious danger that relieves manufacturer and landowner of duty to warn); Note, Look Before You Leap, Can the Emergence of the Open and Obvious Danger Defense Save Diving from Troubled Waters, 49 Syracuse L.Rev. 175, 198–211, nn. 200, 220, 223, 311 (1998), and cases cited. See also *Winant v. Carefree Pools*, 709 F.Supp. 57, 60–61 (E.D.N.Y. 1989) (because danger of diving into shallow end of swimming pool obvious, failure to warn of danger not proximate cause of plaintiff's injuries); *Boltax v. Joy Day Camp*, 67 N.Y.2d 617, 619–620, 499 N.Y.S.2d 660, 490 N.E.2d 527 (1986) (same); *Smith v. Stark*, 111 A.D.2d 913, 914, 490 N.Y.S.2d 811 (2d Dept.1985), aff'd, 67 N.Y.2d 693, 499 N.Y.S.2d 922, 490 N.E.2d 841 (1986) (same).

We are not persuaded by the cases cited by the plaintiff which have held to the contrary. In *Corbin v. Coleco Indus.*, 748 F.2d 411, 417–418 (7th Cir.1984), the United States Court of Appeals for the Seventh Circuit, construing Indiana law, held that the danger of diving headfirst into four feet of water in a swimming pool was not, as a matter of law, open and obvious to a reasonable adult, because "whether a danger is open and obvious depends not just on what people can see … but also on what they know and believe about what they see" and "even though people are generally aware of the danger of diving into shallow water, they believe that there is a safe way to do it, namely, by executing a flat, shallow dive." However, under our law of premises liability, the standard for determining whether a landowner is relieved of a duty to warn is whether the dangerous condition complained of would be obvious to a person of average intelligence, that is, a visitor with ordinary perception and judgment exercising reasonable care for his own safety. That many people might engage in objectively hazardous conduct on the basis of a belief that it can be done safely does not affect our analysis of a defendant's duty of care under this standard if, in light of the obvious risks entailed by the activity, the belief in question, however prevalent it may be, must nonetheless fairly be judged unreasonable, if not foolhardy. See, e.g., *Griebler v. Doughboy Recreational, Inc., supra* at 560, 466 N.W.2d 897. Moreover, in *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 241–242, 677 N.Y.S.2d 764, 700 N.E.2d 303 (1998), the New York Court of Appeals, while reasoning that the open and obvious danger exception to a manufacturer's duty to warn entails a "fact-specific" inquiry most often reserved for a jury, nevertheless concluded that "[w]here only one conclusion can be drawn from the established facts … the issue of |209whether the risk was open and obvious may be decided by the court as a matter of law." Even under this latter approach to the obvious danger rule, we are persuaded that the facts of this case would necessitate summary judgment in favor of the defendants.

The plaintiff argues, however, that the judge, in reaching this conclusion at the summary judgment stage of litigation, improperly drew inferences from the undisputed factual record that were adverse to the plaintiff. The "adverse inference" about which he complains, however, appears to be nothing other than the judge's legal conclusion that the danger of diving into the defendants' pool in the manner

and circumstances described in the record was open and obvious, thus negating the defendants' duty to warn of this danger. The plaintiff's argument, then, must be that such a determination is a matter of fact properly left to the trier of fact, applying principles of comparative negligence. Thus construed, it is but a variant of his argument concerning the Legislature's implicit abolition of the open and obvious danger rule, which we have already adequately addressed.

Finally, the plaintiff argues that, in concluding that the danger was open and obvious, the judge improperly considered subjective factors particular to this plaintiff, thus revealing that, under the guise of performing an objective inquiry about the defendant's duty, he was in reality performing an assumption of risk analysis, in violation of G.L. c. 231, § 85. Admittedly, certain of the factors relied on by the judge—such as the plaintiff's prior experience and ostensible skill as a swimmer, and his awareness that serious injury could result if he were to strike his head on the bottom of the defendants' swimming pool while diving—bear on this particular plaintiff's subjective state of mind and actual knowledge of the danger of engaging in this activity, and thus should have been excluded from an objective inquiry concerning whether the risk of injury was obvious to a hypothetical "person of average intelligence." [3] However, even when such subjective factors are excluded from $\lfloor_{210}$the analysis, sufficient undisputed evidence remains to support the judge's conclusion. See *Flynn v. Connors,* 39 Mass.App.Ct. 365, 367 n. 7, 656 N.E.2d 1266 (1995), citing *GTE Prods. Corp. v. Stewart,* 421 Mass. 22, 36, 653 N.E.2d 161 (1995) (if result is legally correct and supported by undisputed factual record, appellate court may affirm grant of summary judgment on different reasoning).

It would be obvious to a person of average intelligence that a swimming pool must have a bottom. See, e.g., *Mallard v. Hoffinger Indus.,* 222 Mich.App. 137, 143, 564 N.W.2d 74 (1997). We have no doubt that an ordinarily intelligent adult in our society would be aware that the bottom of a swimming pool is a hard surface, liable to cause injury if one were to strike it with one's head. Moreover, the design and layout of the defendants' pool would have indicated to a person of average intelli-

---

**3.** Formulations of the open and obvious danger rule in some of our cases predating the Legislature's elimination of the defenses of contributory negligence and assumption of risk, G.L. c. 231, § 85, as appearing in St.1969, c. 761, § 1, and as appearing in St.1973, c. 1123, § 1, relieved a defendant of the duty to warn of dangers on his premises that either were *known* to the plaintiff or would have been *obvious* to a person of ordinary intelligence. See, e.g., *Greenfield v. Freedman,* 328 Mass. 272, 274, 103 N.E.2d 242 (1952); *Flanders v. Pailey,* 320 Mass. 744, 745, 71 N.E.2d 112 (1947). See also Restatement (Second) of Torts § 343A (1) (1979) *(possessor of land not liable for harm caused by any activity or condition on land whose danger is "known" or "obvious"). "Known" in this context denotes a plaintiff's actual knowledge of the existence of the condition and subjective appreciation of the danger it poses, whereas "obvious" refers to conditions and dangers that, objectively speaking, would be apparent to, and recognized by, a reasonable person in the position of the visitor, exercising ordinary perception, intelligence, and judg-* ment. See Restatement (Second) of Torts § 343A (1) comment (b). *Whether a particular plaintiff knew of and appreciated the danger of a condition on the defendant's property, however, appears to belong to an analysis of the plaintiff's reasonableness in proceeding to confront that hazard; that is, it goes to the extent of the plaintiff's contributory fault for his own injuries, and is therefore a question of fact properly reserved for the trier of fact applying principles of comparative negligence. See Uloth v. City Tank Corp.,* 376 Mass. 874, 882, 384 N.E.2d 1188 (1978)*; W.L. Prosser & W.P. Keeton, Torts § 68, at 486–487 (5th ed.1984);* Note, Look Before You Leap, Can the Emergence of the Open and Obvious Danger Defense Save Diving from Troubled Waters, 49 Syracuse L.Rev. 175, 198–200 (1998). Not surprisingly, then, our more recent formulations of the open and obvious danger rule omit any reference to dangers subjectively "known" to the plaintiff, speaking exclusively in objective terms of dangers "obvious to a person of average intelligence." See, e.g., *Lyon v. Morphew,* 424 Mass. 828, 833, 678 N.E.2d 1306 (1997).

**COM. v. McLAUGHLIN**  Mass.  **959**
Cite as 726 N.E.2d 959 (Mass. 2000)

gence that the end into which the plaintiff dived was not intended for this activity: the diving board was affixed to the opposite end of the pool, making it apparent that the pool's deepest water was located at that end and that diving was intended to take place there. Finally, the plaintiff attempted his dive late in the evening, when there was little if any natural light, and the defendants' pool had no underwater lighting, such that its bottom was not visible to someone standing outside the water. The water into which the plaintiff dived, then, was of uncertain depth. A person of average$_{211}$ intelligence would clearly have recognized that diving head first into shallow water in these circumstances posed a risk of suffering injury by striking the bottom of the pool.

5. *Conclusion.* We conclude that, because the danger of diving into the shallow end of a swimming pool is open and obvious to a person of average intelligence, the defendants had no duty to warn the plaintiff of this danger as a matter of law and, therefore, they could not be found liable for his injuries. The defendants' motion for summary judgment was correctly allowed.

*Judgment affirmed.*



431 Mass. 241

$\lfloor_{241}$**COMMONWEALTH**

v.

**Joseph E. McLAUGHLIN.**

Supreme Judicial Court of Massachusetts, Suffolk.

Argued Feb. 7, 2000.

Decided April 14, 2000.

Defendant was convicted in the Superior Court Department, Suffolk County, Patrick F. Brady, J., of armed assault with intent to murder and conspiracy to commit armed assault with intent to murder, but indictment charging defendant with conspiracy to commit murder was dismissed as time-barred. Defendant and state appealed. After transferring case from the Appeals Court on its own initiative, the Supreme Judicial Court, Spina, J., held that: (1) hearsay statements of defendant's coconspirator were admissible under exception to hearsay rule; (2) coconspirator's statement to government informant was admissible despite its remoteness from inception of conspiracy; (3) instruction on coconspirator hearsay adequately focused jurors' attention on relevant issues; and (4) offense of conspiracy to commit murder was subject to six-year statute of limitations.

Affirmed.

**1. Criminal Law** ⚖**422(1)**

Independent evidence established beyond a reasonable doubt the defendant's involvement in conspiracy to kill his wife, and therefore hearsay statements of defendant's alleged coconspirator were admissible under exception to hearsay rule; witness provided nonhearsay testimony concerning his agreement with coconspirators for use of his car to run down victim, defendant had presented his wife at time and place where others conspired to kill her, defendant had motive to kill his wife, and defendant's attitude toward his wife after she survived could fairly be viewed as one of frustrated disappointment.

**2. Criminal Law** ⚖**427(5)**

Where the issue is the admissibility of a coconspirator's statement the Commonwealth need only establish by a preponderance of the independent evidence that the defendant was involved in the conspiracy.

**3. Criminal Law** ⚖**422(1)**

Witness' testimony concerning his agreement with defendant's alleged cocon-