Exhibit 7 — Smith v. Nicholson, et al. Civil Action No.: 04 CV 10632 MEL

his disappointments and adversities become too heavy for him to bear and so weakened his judgment as to render him unable properly to conduct business transactions? Numerous residents of the same club where Willett lived, some of whom saw him frequently and some had known him for years, testified in substance that they never observed anything that indicated to them that Willett was suffering from any mental illness. There was evidence that he was afflicted with a type of illness that those with whom he associated would not suspect that he had. As to the extent his judgment might be impaired in conducting a business transaction, there was testimony that he might become involved "with suspicions that might cause him not to do it because he thought it would be deleterious or that there was a plot back of it." Willett had sold considerable property between 1918 and 1940. There was no evidence that he did not receive a fair and reasonable price. On the other hand there was testimony of qualified experts called by the respondent that he was not afflicted with any mental illness.

The judge found that there is a persistency and repetitiveness in Willett's thinking, writings, and actions relative to a conspiracy to prevent him from obtaining the funds necessary to develop his housing projects and that such a conspiracy does not exist. He also found that he is afflicted with a well developed mental obsession, classified medically as a psychosis of the type known as true paranoia; that he is suffering from delusions of grandiosity and persecution that affect his competency and cause him to misinterpret facts of great importance to his welfare; and that he is incapable of taking care of himself and his property.

[5] The respondent finally contends that by the terms of the governing statute, G.L. (Ter.Ed.) c. 201, § 6, as amended, he must be found to be insane and "incapable of taking care of himself" before a guardian can be appointed. Enough has already been said as to the nature and effect of the respondent's mental illness together with the findings of the judge in connection therewith, which cannot be pronounced plainly wrong, to support the conclusion that the respondent was suffering from insane delusions. We are of opinion that there was no error in finding that he was incapable of taking care of himself.

[6] There was no error in excluding a question put to one of the respondent's counsel who had become a witness as to whether he had noticed anything in the respondent's conversation that indicated anything singular or unusual respecting his mental condition. After an argument by counsel the judge permitted the witness to answer a substantially similar question. McCoy v. Jordan, 184 Mass. 575, 69 N.E. 358. The respondent suffered no harm. Posell v. Herscovitz, 237 Mass. 513, 130 N.E. 69.

Decree affirmed.



---

Anna B. WARDWELL

v.

GEORGE H. TAYLOR CO.[1]

Supreme Judicial Court of Massachusetts.

Middlesex.

Argued Oct. 6, 1955.

Decided Dec. 5, 1955.

Action to recover for damage to plaintiff's dwelling house and to personal property from fire allegedly caused by negligence of defendant in supplying kerosene wallpaper steaming machine which caught fire when used by workmen in plaintiff's

---

1. Fred Turilli was originally a codefendant. On motion the judge directed that the jury return a verdict for him and no exception was taken to that order.

house. The Superior Court, Beaudeau, J., denied defendant's motion for directed verdict, and plaintiff brought exceptions. The Supreme Judicial Court, Counihan, J., held that evidence was insufficient to warrant finding that defendant was negligent and that action should not have been submitted to jury.

Exceptions sustained.

1. Negligence ⟺136(18)

In tort action for damage to plaintiff's house and personal property allegedly due to negligence of defendant in supplying defective kerosene wallpaper steaming machine which caught fire when used in plaintiff's house by workman, evidence on issue of defendant's negligence was insufficient for jury.

2. Negligence ⟺121(2)

The occurrence of accident standing alone is not always evidence of negligence, and it may be as consistent with innocence as with fault of person controlling agency by which accident happened.

3. Negligence ⟺136(25)

When precise cause of accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, verdict should be directed against the plaintiff.

Richard J. Cotter, Jr., Boston, for plaintiff.

William J. Conboy, West Roxbury, for defendant George H. Taylor Co.

Before QUA, C. J., and RONAN, WILKINS, SPALDING and COUNIHAN, JJ.

COUNIHAN, Justice.

This is an action of tort to recover for damage to a dwelling house and to personal property resulting from a fire alleged to have been caused by the negligence of the defendant. The declaration was in two counts, one in tort and one in contract. The count in contract was waived in open court and the count in tort went to the jury who found for the plaintiff. The action comes here upon an exception of the defendant to the denial of its motion for a directed verdict, and to the denial of its motion to strike out the testimony of the chief of the fire department. Because we conclude that there was error in the denial of the motion for a directed verdict we do not consider other matters argued by the defendant.

The bill of exceptions is not entirely clear but from it we infer that the evidence in its aspects most favorable to the plaintiff was as follows. Fred Turilli was engaged by the plaintiff to remove the wallpaper in the living room of her dwelling house. He hired one Publisi to do this work. Publisi owned a kerosene wallpaper steaming machine which he had used frequently in the removal of wallpaper. Because his machine was not working properly, with Turilli he went to the place of business of the defendant where Turilli rented a machine similar to that owned by Publisi. This machine was in two parts, a tank and a boiler with a hose attached to it. A sketch of the machine was in evidence but it was not certified for use before us. To make this machine workable for the purpose of removing wallpaper, kerosene is placed in the tank and air pressure is applied to it through a filler cap. A filler cap was in evidence as an exhibit but it also was not certified for use before us. The air which is admitted to the tank, at what point we do not know, is supposed to build up a pressure of approximately twenty-five pounds to force the kerosene through a preheated coil, which changes the kerosene from a liquid to a vapor or gas. This vapor or gas is then ignited by the preheated coil. The tank is placed under a boiler which contains water which the lighted vapor or gas turns into steam. The steam comes out through a hose and is applied to the wallpaper to facilitate its removal. The filler cap has a valve with a ball bearing device which permits air to enter the tank under pressure. Once inside the tank the air and

kerosene force the ball bearing device into a seat which seals the valve so that no air or kerosene may escape through it. Publisi prepared the machine for operation and ran it fifteen or twenty minutes to get steam up. It is not clear from the record just how he did this, but it did appear that he used alcohol to preheat the coil. He then applied the steam to the wallpaper for a period of fifteen or twenty minutes when he noticed that the machine was on fire. The machine was "all in flames and the kerosene was coming out of the filler cap valve." Up to that time the machine was "in absolutely good working order." Publisi, who was qualified by the judge as an expert, testified that in his opinion if the ball bearing device in the filler cap was working properly it would put the ball bearing device against a seat in the cap so it would prevent air from coming back through the cap; that if air came through it then it was not working properly; and "that he did not know what was wrong with it but it could be, possibly, the dirt." In his opinion the fire was caused by kerosene which escaped "either by the ball bearing or by the filler cap valve gasket." After the fire the chief of the fire department and a fire captain examined the filler cap after it had been removed from the machine and found that when they blew through the filler cap from the inside, air passed through it. The chief testified that at the scene of the fire "the valve was leaking" when he got there and that he saw "a very fine stream" coming out of the filler cap valve. He had no opinion as to the cause of the fire and he was uncertain as to the reason air came through the filler cap.

[1] We are of opinion that this evidence was insufficient to warrant a finding that the defendant was negligent, and that the action should not have been submitted to the jury. It is true that there was evidence that after the fire the filler cap valve was not working properly and that in the opinion of the expert this condition might *possibly* have been caused by dirt in the filler cap valve. But there was no evidence that there was dirt in the filler cap valve at any time before or after the accident, much less that there was dirt in it when the defendant rented the machine. The evidence that the machine was working properly for a period of thirty to forty minutes before the fire would appear to negate any such probability. The opinion of the expert in this respect is based only on a possibility which we think is not enough to warrant a finding of negligence. "Mere proof of an explosion plus evidence that an explosion could be caused by an improper cleaning of the burner—and no more than that was shown here—established only that there was a possibility that the burner was not properly cleaned. Verdicts must rest on more solid foundations." Friese v. Boston Consolidated Gas Co., 324 Mass. 623, 631, 88 N.E.2d 1, 5.

[2, 3] It is as consistent on the evidence in this action to conclude that, if there was any dirt in the valve, it got there because of improper preparation of the machine for operation, or in the operation of the machine in removing the wallpaper, or because of the fire itself as to conclude that there was dirt in the valve when the defendant rented it or that the machine was otherwise defective then. The presence of dirt or other defects at the time the machine was rented is purely speculative and a matter of surmise and conjecture. "The occurrence of an accident, standing alone, is not always evidence of negligence. It may be as consistent with the innocence as with the fault of the person controlling the agency by which the accident happened. When the precise cause is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then a verdict should be directed against the plaintiff." Ryan v. Fall River Iron Works Co., 200 Mass. 188, 192, 86 N.E. 310, 312; Hill v. Iver Johnson Sporting Goods Co., 188 Mass. 75, 74 N.E. 303; Morrow v. Otis, 251 Mass. 65, 67–68, 146 N.E. 363; Baker v. Davis, 299 Mass. 345, 348, 12 N.E.2d 816; Allan v. Essnannee, Inc., 309 Mass. 1, 7, 33 N.E.2d 271; LeBlanc v. Atlantic Building & Supply Co., Inc., 323 Mass. 702, 706, 84 N.E.2d 10;

Boyle v. Cambridge Gas Light Co., 331 Mass. 56, 63, 117 N.E.2d 150.

Exceptions sustained.

Judgment for the defendant.



### Joseph COSTA'S CASE.

Supreme Judicial Court of Massachusetts.

Bristol.

Argued Oct. 31, 1955.

Decided Dec. 1, 1955.

Workmen's compensation case, wherein claimant sought compensation from three insurers. The Superior Court, Rome, J., entered a decree in accordance with reviewing board's determination of liability on part of one insurer, and that insurer appealed. The Supreme Judicial Court, Spalding, J., held that evidence warranted imposing liability upon that insurer, but that child who was born to claimant after date of compensable injury, but before award therefor, was not a "dependent" within statute authorizing additional compensation for an injured employee's dependents.

Decree reversed with directions.

**1. Workmen's Compensation ⊜1074**

Only one insurer can be charged for the same disability, and where there are several successive insurers, chargeability for whole compensation rests upon the one covering risk at time of most recent injury that bears a causal relation to disability.

**2. Workmen's Compensation ⊜1939**

Question of which of several alleged successive injuries was the most recent bearing a causal relation to disability, for purpose of determining liability of successive compensation insurers, was a question of fact for workmen's compensation board, and finding thereon must stand unless a different finding was required as a matter of law.

**3. Workmen's Compensation ⊜1074**

In workmen's compensation case, where issue presented was which of successive compensation carriers was liable for disability, evidence supported finding that the most recent injury which bore causal relation to disability was claimant's original back injury, and that alleged subsequent trauma which were supposed to have occurred while he attempted to continue working did not contribute to disability. G.L.(Ter.Ed.) c. 152, §§ 41, 44, 49.

**4. Workmen's Compensation ⊜1704**

Weight and credibility of evidence were for workmen's compensation board to determine.

**5. Workmen's Compensation ⊜506**

Child who was born to claimant after date of compensable injury, but before award therefor, was not a "dependent" within statute authorizing additional compensation for an injured employee's dependents. G.L.(Ter.Ed.) c. 152, §§ 1(3), 35A(a, c), as amended by St.1946, c. 553.

See publication Words and Phrases, for other judicial constructions and definitions of "Dependent".

William J. Fenton, Taunton, for Continental Cas. Co.

Walter I. Badger, (Jr.), Boston, for Travelers Ins. Co.

Dana J. Kelly, Boston, for Massachusetts Bonding & Ins. Co.

Harold K. Hudner, Fall River, for claimant.

Before QUA, C. J., and RONAN, WILKINS, SPALDING and COUNIHAN, JJ.