Exhibit 8
Smith v. Nicholson, et al.
Civil Action No.: 04 CV 10632 MEL

earned by a waitress (*Powers's Case*, 275 Mass. 515, 518–520, 176 N.E. 621 [1931]), and board and room (*Palomba's Case*, 9 Mass.App.Ct. 881, 401 N.E.2d 899 [1980]), are facially distinguishable because they "bear a close analogy to wages paid by [the employer]," *Powers's Case, supra,* 275 Mass. at 519, 176 N.E. 621, unlike the value of health insurance.

₃₈₁Cases from other jurisdictions which tend to favor the employee are not helpful because they have been decided under statutes which are dissimilar to ours. See, e.g., *State Compensation Ins. Auth. v. Smith,* 768 P.2d 1256, 1258 (Colo.Ct.App. 1988) (statutory definition of "wages" which includes monetary compensation and *similar advantages* construed to encompass value of health insurance benefits). Notably, in *Morrison–Knudsen Constr. Co. v. Director, Office of Workers' Compensation Programs,* 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), discussed by the parties, the United States Supreme Court held that the term "wages" under § 2(13) of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. (part 2) 1425, codified at 33 U.S.C. § 902(13) (1982), did *not* include the employer contribution to union trust funds for health and welfare, pensions and training despite the fact that the Federal statute included the phrase "similar advantage," id. at 629–630, 103 S.Ct. at 2048, the phrase which the Massachusetts Legislature deleted from G.L. c. 151A in 1941.

There are policy considerations which favor both sides of this question, but they are more properly addressed to the Legislature which to date has left the definition of "average weekly wages" unchanged despite a comprehensive revision of G.L. c. 152.

Accordingly, the decision of the reviewing board of the Department of Industrial Accidents is affirmed.

*So ordered.*



1. Deborah W. Marshall.

411 Mass 394

₃₉₄Roger L. CAMERLIN

v.

Robert J. MARSHALL et. al.[1]

Supreme Judicial Court of Massachusetts, Bristol.

Argued Oct. 8, 1991.

Decided Dec. 12, 1991.

Commercial tenant's injured employee filed slip-and-fall action against landlord. The Bristol Superior Court, Chris Byron, J., denied injured employee's motions for judgment notwithstanding verdict for landlord and for new trial. Injured employee appealed. The Supreme Judicial Court, Lynch, J., held that: (1) no circumstances warranted application of rule that residential landlord was liable for defect of which he had notice and reasonable opportunity to repair, even though defect existed on rented premises; (2) plaintiff's motion to redact from his employer's lease a provision requiring that employer carry liability insurance was untimely, and landlord's blanket insurance policy covering more than one location was not admissible on issue of control; and (3) evidence supported jury finding that area where tenant's employee fell was not in landlord's control and that landlord was in exercise of due care.

Affirmed.

1. Landlord and Tenant ⟺165(2)

Rule, that residential landlord is liable for defect of which he has notice and reasonable opportunity to repair even though defect exists on rented premises, would not be extended to suit by injured employee of tenant national company which had assumed responsibility for maintaining premises, plowing parking lot, and making or

paying for minor repairs; case did not involve the kind of inexperienced, financially constrained, short-term tenancy to which rule was addressed.

**2. Appeal and Error ⚖️204(4)**

Plaintiff in slip-and-fall action waived right to appellate review of issue of whether admission of evidence of workers' compensation forms violated "collateral source" rule by failing to object to introduction of those documents.

**3. Trial ⚖️39**

Motion to redact from commercial lease a provision requiring that tenant carry liability insurance, filed on the last day of trial several days after admission of exhibit and after close of all the evidence, was untimely.

**4. Evidence ⚖️264**
   **Landlord and Tenant ⚖️169(5)**

In slip-and-fall action by commercial tenant's injured employee against landlord, landlord's blanket insurance policy covering more than one location was not admissible on issue of control.

**5. Landlord and Tenant ⚖️169(11)**

Jury in slip-and-fall action against landlord by tenant's employee who was injured when, while entering doorway to tenant's premises, he stumbled at threshold and fell into entryway, could find that area where employee fell was not in landlord's control and that landlords were in exercise of due care; employee himself testified that he was aware prior to accident of both pothole in parking lot and hole in rug, one of which allegedly caused fall.

---

⌊395⌋Douglas H. Smith, Providence, R.I., (Raymond J. Tomasso, with him) for plaintiff.

Garrett Harris, Boston, for defendants.

Before LIACOS, C.J., and WILKINS, LYNCH, O'CONNOR and GREANEY, JJ.

LYNCH, Justice.

The plaintiff's claim arises from a slip and fall that occurred in August, 1982, in a building owned by the defendants and leased to the plaintiff's employer. After a trial in the Superior Court a jury found, by means of special verdicts, that the defendants were not negligent. The plaintiff's motions for judgment notwithstanding the verdict and for a new trial were then denied, and he appealed. We transferred the matter here on our own motion, and now affirm.

There was evidence from which the jury could have found the following: On August 23, 1982, the plaintiff, a regional director of a medical supply firm, Johnson Rents, Inc. (Johnson), fell as he was entering Johnson's leased premises at 824 Taunton Avenue in Seekonk. Johnson had leased the entire first floor and half of the second floor of the building since May, 1981. Under the terms of the lease, Johnson was to pay utilities; provide liability insurance; and be responsible for maintenance, plowing and minor repairs up to $100 per occurrence.

⌊396⌋The building had two doorways. Johnson's employees and customers had exclusive use of the left doorway, while the doorway on the right provided access to the other tenant's space.

While entering the doorway to Johnson's premises, the plaintiff stumbled at the threshold and fell into the entryway. There was evidence that either a hole in the parking lot or in the entryway rug caused the fall. However, the plaintiff's doctor's report indicates he told his doctor that he injured himself when he "tripped on a rug [and] fell forcibly down." On September 21, 1982, the plaintiff signed a workers' compensation agreement that identifies the cause of the accident as a "hole in rug." A few days later, the plaintiff signed another workers' compensation form in which he stated that his injury occurred when he "tripped on a whole [sic] in the rug or a hole in tar in front of door." The defendants introduced these exhibits and the lease in evidence without any objection from the plaintiff.

There also was evidence that, at the time of the accident, there was a pothole in the parking lot, six to seven inches wide and

three to four inches deep, that had been there for approximately eight months. The plaintiff knew about the pothole and the tear in the rug. The plaintiff testified that he had orally complained to the landlords several times before the accident that the carpeting inside the premises was worn, torn, and bubbling. At least one of the landlords visited the premises on a weekly basis.[2]

The defendants also introduced a 1984 workers' compensation form in which the plaintiff stated that he felt "his incapacity for work had ended." When the defendants first introduced this form, the plaintiff objected because it contained a reference to a "lump sum" that the plaintiff had received in settlement of his workers' compensation claim. At the direction $_{397}$ of the judge, the defendants removed the "lump sum" reference and this sanitized form was then admitted, without the plaintiff's objection. On the last day of the trial, the plaintiff moved to have the judge redact references to insurance in the Johnson lease. The judge refused. The plaintiff had also requested a jury instruction under the rule of *Young v. Garwacki*, 380 Mass. 162, 402 N.E.2d 1045 (1980). The judge denied this request.

[1] 1. *The rule of Young v. Garwacki.* In *Young v. Garwacki, supra* at 162, 402 N.E.2d 1045, we ruled that a residential landlord is liable for a defect of which he had notice and had a reasonable opportunity to repair, even though the defect existed on the rented premises. *Id.* at 170, 402 N.E.2d 1045. The plaintiff argues that this rule should be extended to this situation and that the judge's failure to do so is reversible error.

In *Young* we specifically reserved the question of its application to leased commercial property. *Id.* at 171 n. 12, 402 N.E.2d 1045. Subsequent decisions have done the same. *Chausse v. Coz*, 405 Mass. 264, 266–267, 540 N.E.2d 667 (1989). *Agustynowicz v. Bradley*, 25 Mass.App.Ct. 405, 407, 519 N.E.2d 599 (1988). *Brighetti v. Consolidated Rail Corp.*, 20 Mass.App.Ct. 192, 197 n. 5, 479 N.E.2d 708 (1985). We perceive no circumstances here that warrant an extension of the *Young* rule. Johnson is a national company, headquartered in Pennsylvania, that leased other property in Massachusetts. As a tenant not unsophisticated in such matters, Johnson assumed responsibility for maintaining the premises, plowing the parking lot, and making or paying for minor repairs. In sum, this case does not involve the kind of inexperienced, financially-constrained, short-term tenancy to which the *Young* ruling was addressed. Accordingly, the trial judge properly refused to instruct in accordance with *Young*.

The plaintiff also presses several other claims of error, which we address briefly in turn.

[2] 2. The plaintiff contends that, by admitting evidence of the workers' compensation forms, the judge violated the general rule that a defendant may not show that a plaintiff has received compensation for his injuries from a "collateral source." *Goldstein v. Gontarz*, 364 Mass. 800, 808–809, 309 N.E.2d 196 $|_{398}$(1974). This argument borders on the frivolous. Passing over several sound arguments justifying the admission of the forms, we simply say that the plaintiff did not object to the introduction of these documents. Accordingly, by failing to object the plaintiff has waived his right to appellate review of the issue. *Freyermuth v. Lutfy*, 376 Mass. 612, 616, 382 N.E.2d 1059 (1978).

[3] 3. The plaintiff next contends the judge was in error in not allowing his motion to redact from the Johnson lease a provision requiring that Johnson carry liability insurance. The motion to redact was filed on the last day of the trial several days after the admission of the exhibit and after the close of all the evidence. The plaintiff's motion was therefore untimely, and the denial of the motion for that reason alone was within the discretion of the judge. *Solomon v. Dabrowski*, 295 Mass. 358, 360, 3 N.E.2d 744 (1936). *Kolligian v.*

---

2. The defendants owned, and operated a business out of, the building next door, which was located sixteen to eighteen feet from the building at 824 Taunton Avenue. The two buildings shared a common asphalt parking lot located in front of both buildings. The parking surface extended up to the two front doors at 824 Taunton Avenue.

*Cambridge,* 18 Mass.App.Ct. 991, 470 N.E.2d 815 (1984). *Correia v. New Bedford Redevelopment Auth.,* 5 Mass.App. Ct. 289, 294–295, 362 N.E.2d 538 (1977).

[4] 4. The plaintiff claims that, under the authority of *Perkins v. Rice,* 187 Mass. 28, 30, 72 N.E. 323 (1904), the judge should have admitted the defendants' blanket insurance policy. In *Perkins,* a policy of indemnity insurance was held to be admissible on the issue of control. Here, we are concerned with a blanket insurance policy covering more than one location, and blanket insurance policies are not admissible to show control. *Minkkinen v. Nyman,* 325 Mass. 92, 95, 89 N.E.2d 209 (1949). See also *Gladney v. Holland Furnace Co.,* 336 Mass. 366, 368, 145 N.E.2d 694 (1957) (blanket policy covering fleet of automobiles not evidence of control of one specific vehicle).

5. The plaintiff objects to the judge's instructions limiting a landlord's liability for unsafe conditions in premises under his control.[3] This argument seems to be predicated on *Young* ↓399*v. Garwacki, supra,* which we have already concluded has no application here. The judge's instructions were therefore in accord with long established common law principles. See, e.g., *Young v. Atlantic Richfield Co.,* 400 Mass. 837, 842, 512 N.E.2d 272 (1987) (no duty to warn if the dangers are known or obvious to a person of average intelligence); *Oliveri v. Massachusetts Bay Transp. Auth.,* 363 Mass. 165, 167, 292 N.E.2d 863 (1973) (landlord has alternative duty either to make the premises under his control reasonably safe or to warn of any dangers on those premises); *LeBlanc v. Atlantic Bldg. & Supply Co.,* 323 Mass. 702, 705, 84 N.E.2d 10 (1949) (duty to warn does not extend to obvious dangers). The judge's charge was consistent with these rules of law.[4]

[5] 6. There is a similar lack of merit to the plaintiff's claims that the verdict was against the weight of the evidence and that his motion for judgment notwithstanding the verdict should have been allowed.

There was ample evidence on which the jury could have found that the area where the plaintiff fell was not in the control of the defendants and that the defendants were in the exercise of due care. Furthermore, the plaintiff himself testified that he was aware prior to the accident of both the pothole in the parking lot and the hole in the rug.

↓400 7. The plaintiff's final challenge is to the denial of the motion for a new trial. We have so frequently discussed and applied the considerations which govern a motion for new trial as stated in *Bartley v. Phillips,* 317 Mass. 35, 40–44, 57 N.E.2d 26 (1944), that we need not repeat them here. As explained above, there was ample evidence to support the verdict in favor of the defendants. The judge's denial of the motion for a new trial was therefore not an abuse of discretion.

*Judgment affirmed.*



---

3. With respect to the duty of care owed by landlords to third parties, the judge first instructed the jury as follows:

   "[I]f a landlord retains any control over any portion of his premises, then as to that portion of the premises, he owes a duty to use reasonable care to keep it in a reasonably safe condition for the use of his tenant and others lawfully there and to warn them of any dangers that might arise from such use which are not likely to be known and the existence of which the landlord knew or ought to have known."

   "If the condition of the premises, though, is open and obvious to them or to any ordinarily intelligent person in the exercise of due care, then no warning of any danger is necessary."

   The judge then later charged the jury:

   "I told you that [the landlord] has a duty to use reasonable care to keep in a reasonably safe condition any part of the premises which he retained control of, and if there is any danger to anyone, then he has a duty of taking reasonable care to correct the matter or to warn the people of any danger; and if the matter is open and obvious to a person of reasonable intelligence, or if it was open and obvious to the plaintiff, then no warning of danger was necessary."

4. The plaintiff's argument on appeal that G.L. c. 186, § 19, is somehow applicable to this case was not only not raised below, but the plaintiff actually informed the judge that the statute did not apply in this case.